UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ESTATE OF ARI YOEL FULD                    :
by and through its                             :
Personal Representative and Administrator      :
Miriam Fuld                                    :
30 Zayit Shemen Street, Apt 1                  :
Efrat Israel 9043500                           :        Civil Action No. _____
                                               :
and                                            :
                                               :
MIRIAM FULD                                    :
30 Zayit Shemen Street, Apt 1                  :
Efrat Israel 9043500                           :
                                               :
and                                            :
                                               :
N.S.F.                                         :
By and through his Natural Guardian            :
Miriam Fuld                                     :
30 Zayit Shemen Street, Apt 1                  :
Efrat Israel 9043500                           :
                                               :
and                                            :
                                               :
Naomi Fuld                                     :
30 Zayit Shemen Street, Apt 1                  :
Efrat Israel 9043500                           :
                                               :
and                                            :
                                               :
Tamar Gila Fuld.                               :
30 Zayit Shemen Street, Apt 1                  :
Efrat Israel 9043500                           :
                                               :
and                                            :
                                               :
Eliezar Yakir Fuld                             :
30 Zayit Shemen Street, Apt 1                  :
Efrat Israel 9043500                           :
                                               :
            Plaintiffs                         :
                                               :

       v.                                          :
                                              :

THE ISLAMIC REPUBLIC OF IRAN      :
Ministry of Foreign Affairs            :
Khomeini Avenue                    :
United Nations Street                :
Tehran, Iran                          :
                                              :

and                                        :
                                              :

THE SYRIAN ARAB REPUBLIC      :
Ministry of Foreign Affairs            :
Damascus, SYRIA               :
                                              :
                     Defendants.      :

_____:

## **COMPLAINT**

1.      This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff as more particularly described in the caption of this action for their own benefit, and for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act 28 U.S.C. § 1605A(c). Plaintiffs, by counsel, respectfully bring this action against Defendants Islamic Republic of Iran ("Iran") and the Syrian Arab Republic ("Syria") jointly and severally. This matter is related to, *inter alia*, *Fuld, et al. v. Islamic of Republic of Iran, et al*., Civil Action No. 20-02444 (RCL) (D.D.C.) ("Fuld I Case); *Botvin, et al. v. Islamic of Republic of Iran, et al*., Civil Action No. 05-220 (RCL) (D.D.C.) ("Botvin I Case"); *Goldberg-Botvin, et al. v. Islamic of Republic of Iran*, Civil Action No. 12-1292 (RCL) (D.D.C.) ("Botvin II Case"); *Roth, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 11-01377 (RCL) (D.D.C.) ("Roth Case"); *Baxter, et al. v Islamic Republic of Iran, et al.* Civil Action Nos. 11-02133 (RCL) (D.D.C.) ("Baxter Case"); *Steinberg, et al. v. Islamic Republic of Iran, et. al.* Civil Action No. 17-1910 (RCL) (D.D.C.) ("Steinberg Case"), and *Henkin, et al. v. Islamic Republic of Iran, et al.,* Civil Action no. 18-01273 (RCL) (D.D.C.) ("Henkin Case") in

that it involves Iranian and Syrian sponsorship of the same terrorist organization, the Islamic Resistance Movement ("HAMAS") which has resulted in the death and injuries of American citizens.

## JURISDICTION, VENUE, AND CHOICE OF LAW

2.     This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A.

3.     Defendant Islamic Republic of Iran has been designated as a State Sponsor of Terrorism by the United States Department of State since 1984 and continues to have been so designated to the present day.

4.     Defendant Syrian Arab Republic has been designated as a State Sponsor of Terrorism by the United States Department of State since 1979 and continues to have been so designated to the present day.

5.     Defendants Iran and Syria are subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A ("FSIA").

6.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign State may be brought in the United States District Court for the District of Columbia.

7.     Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents within the meaning of 28 U.S.C. § 1605A(c) are unique causes of actions arising out of federal counterterrorism statute(s) and are controlled by applicable federal law.

## THE PARTIES

A.  **The Plaintiffs**

8.      This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and on behalf of all those legally entitled to assert a claim under the FSIA as the survivors and/or family members of Ari Fuld, a United States citizen.

### The Fuld Family

9.      Plaintiff Estate Ari Yoel Fuld, a Kings County, New York estate, is represented in this action by its duly appointed Administrator, Miriam Fuld. Ari Yoel Fuld was murdered on September 16, 2018 by a terror attack committed by HAMAS, a Foreign Terrorist Organization ("FTO").   At the time of the acts alleged, and at all other times relevant hereto, Ari Fuld was a citizen of the United States and at all times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Ari Yoel Fuld can sue and be sued in this Court.

10.     Plaintiff Miriam Fuld was, and at all times relevant hereto, the wife of Ari Fuld and a citizen of the United States. Plaintiff Miriam Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Miriam Fuld can sue and be sued in this Court.

11.     Plaintiff N.S.F. was, and at all times relevant hereto, the son of Ari Fuld and a United States citizen. Plaintiff N.S.F. has suffered severe mental anguish and extreme emotional pain and suffering N.S.F. is a minor born April XX, 20XX who lives with his mother and three siblings. Plaintiff N.S.F. can sue and be sued in this Court.

12.     Plaintiff Naomi Fuld was, and at all times relevant hereto, the daughter of Ari Fuld and a United States citizen. Naomi Fuld has suffered severe mental anguish and extreme emotional pain and suffering Plaintiff Naomi Fuld can sue and be sued in this Court.

13.     Plaintiff Tamar Gila Fuld was, and at all times relevant hereto, the daughter of Ari Fuld and a United States citizen. Plaintiff Tamar Gila Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Tamar Gila Fuld can sue and be sued in this Court.

14.     Plaintiff Eliezer Yakir Fuld was, and at all times relevant hereto, the son of Ari Fuld and a United States citizen. Plaintiff Eliezer Yakir Fuld has suffered severe mental anguish and extreme emotional pain and suffering Plaintiff Eliezer Yakir Fuld can sue and be sued in this Court.

**B.  The Defendants**

15.     Defendants Islamic Republic of Iran and Syrian Arab Republic are jointly and severally liable to Plaintiffs for all of their damages suffered by the Plaintiffs, and each of them, due to the heinous terror attack and murder committed upon the decedent, Ari Fuld, thereby entitling them to recover to the fullest extent of the law.

**The Islamic Republic of Iran**

16.     Defendant Islamic Republic of Iran is a foreign state that has been designated and continues to remain designated as a State Sponsor of Terrorism pursuant to § 60 of the Export Administration Act of 1979 (50 U.S.C. App. § 2405) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) at all times since January 19, 1984.  Iran, at all times pertinent to this action, provided and continues to provide material support and resources to HAMAS, in aid and support of its violent terror campaign against individual people, the State of Israel, a member-state of the United Nations, and contrary to the national security interests of the United States.

17.     Iran, through its actions, caused the death and injuries described herein, within the meaning of 28 U.S.C. § 1605A, by providing HAMAS with funding, direction, material support, encouragement, safe haven and/or training for its terrorist activities.

18.     Defendant Iran is liable for the actions of HAMAS and its agents.

**Syrian Arab Republic**

19.     Defendant Syrian Arab Republic is a foreign state that has been designated and continues to remain designated as a State Sponsor of Terrorism pursuant to § 60 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) at all times since December 29, 1979.  Syria, at all times pertinent to this action, provided material support and resources to HAMAS, in aid and support of its violent terror campaign against individual people, the State of Israel, and contrary to the national security interests of the United States.

20.     Syria, through its actions, caused the death and injuries described herein, within the meaning of 28 U.S.C. § 1605A, by providing HAMAS with funding, direction, material support, encouragement, safe haven and/or training for its terrorist activities.

21.     Defendant Syria is liable for the actions of HAMAS and its agents.

**STATEMENT OF FACTS**

22.     Several prominent terrorist organizations operate in the Palestinian territories administered by the State of Israel and/or the Palestinian Authority and located on the West Bank of the Jordan River and in Gaza, the most notable of them all of which is HAMAS. HAMAS's committed widespread terrorist attacks during the First Intifada (1987 - 1993), the Second Intifada (2000 - 2005), before, during and since its violent takeover of the Gaza Strip in June 2007 following Israel's withdrawal from Gaza in 2005, and its subsequent and continuing terror attacks upon innocent citizens, residents and civilians living in and visitors to the State of Israel.

23.     HAMAS is the Islamic Resistance Movement and is a primarily radical Islamist terrorist organization that is committed to the globalization of Islam through violent "Jihad", which means "holy war".

24.     HAMAS is formally committed to the destruction of the State of Israel, a sovereign nation, is extremely anti-American, rejects achieving a peaceful resolution between Israel and the Palestinians and is committed to achieving its objectives by violent means, including acts of international terrorism.

25.     HAMAS is an acronym for "Harakat Muqawama Islamiyya," which was founded in December 1987.

26.     The HAMAS political documents call for the establishment of an Islamic Palestinian state throughout and in place of Israel by eliminating the State of Israel through violent jihad.

27.     HAMAS propaganda since the September 11, 2001 World Trade Center attacks has praised and glorified Osama bin Laden and his supporters engaged in global jihad.

28.     Through its military wing, Izz ad-Din al-Qassam Brigades ("Al-Qassam Brigades"), HAMAS commits criminal activity, including murder, attempted murder, solicitation to commit murder, and numerous other acts of international terrorism, as defined by 18 U.S.C. § 1331, in violation of the criminal code of the United States.

29.     On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist organization and, on October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act as amended by the Antiterrorism and Effective Death Penalty Act of 1996. HAMAS is also designated as a Specially Designated Global Terrorist Organization.

30.     HAMAS has also committed kidnapping and hostage taking in order to put pressure on the Israeli and American governments, consistent with its terror activities and its total rejection

of peace with Israel.

31.    Between 1999 and the date of the terrorist attack at issue in this case, the courts of the United States, including this Court, have published a number of decisions finding that HAMAS was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

32.    HAMAS recruits young people in high schools and on university campuses to be terrorists and commit single acts of terror including attacks on individual Israelis, Americans and Jews who are living or working or shopping in the towns and villages adjacent to or within the areas of the West Bank of the Jordan River.

33.    In recent years, stabbing attacks by single HAMAS terrorists have emerged as the most common type of terrorist attack in the West Bank.

34.    In 2018, stabbing attacks were at the peak of HAMAS terrorist activity.  HAMAS was actively trying to show that not only could it commit terror at the security border between Israel and the Gaza Strip where HAMAS was in control, but it also could commit terror along the areas of the towns and villages adjacent to or in the West Bank, with operations designed to launch terrorism against Jews, Israelis, Americans and the rest of the civilian population living, working, shopping or visiting in the West Bank area.

35.    In 2018 there were a total of 22 terrorist stabbing attacks in Israel.  Ari Fuld was the ninth civilian victim of a terrorist stabbing attack that year, an attack committed by Khalil Yusef Ali Jabarin, who has been convicted in the Israeli Military Court of having murdered Ari Fuld.  The convicted terrorist is now imprisoned in the Israeli Prison System.

36.    During the First Intifada and Second Intifada and continuing until today, HAMAS carried out hundreds of terrorist attacks intentionally injuring and killing American citizens through suicide bombings, shootings, stabbings, rocket attacks, car rammings, and a wide variety

of other terror activities.  HAMAS not only encourages these attacks, but is proud of the attackers, who become celebrated martyrs who directly or through their families receive monies from the Palestinian Authority and/or the Palestine Liberation Organization and/or others as incentives and rewards for having committed acts of murder and other acts of international terror.

## THE MURDER OF ARI FULD WAS AN ACT OF INTERNATIONAL TERRORISM

37.     On September 16, 2018, Ari Fuld, an American citizen, was stabbed and killed in the Gush Etzion junction in Israel, located adjacent to a community where Israelis, Jews and Americans reside, work, shop and live.

38.     The murder of Ari Fuld on September 16, 2018 was committed by HAMAS, through a heinous act of murder by one of its terrorists with the material aid and support of Defendants Iran and Syria, and was an act of international terrorism.

39.     Ari Fuld left his home for a routine shopping trip near the popular Rami Levy supermarket at the Gush Etzion Junction when he was targeted by Khalil Jabarin and stabbed multiple times in the upper back and neck by the terrorist using a 21-centimeter knife. After he was stabbed, he pursued, shot, and wounded the terrorist, who was by that point attempting to also attack a local shop employee.  While the shop employee's life was spared, Fuld, who was transported to the hospital, subsequently died from his fatal injuries.

40.     An investigation revealed that the terrorist who stabbed and murdered Ari Fuld was carried out by HAMAS terrorist -Khalil Yusef Ali Jabarin.  Jabarin was arrested, indicted, and convicted for the murder of Ari Fuld and the attempted murder of three others.

41.     A few hours after the attack, HAMAS praised the attack.

42.      Eventually, HAMAS, through the official website of Al-Qassam Brigades, took

responsibility for the terrorist attack by releasing a video.  In the video, the spokesperson for the Al-Qassam Brigades shows pictures of Khalil Jabarin and a video of Jabarin fleeing from the scene of the terrorist attack.  The video includes captions proclaiming that HAMAS' jihadist soldiers will continue their presence in the West Bank and will not leave.

43.     HAMAS was and is neither a sovereign entity nor *de facto* government, but rather was and remains a Specially Designated Foreign Terror Organization at all times relevant hereto.

## IRAN'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

44.     The Islamic Republic of Iran has used and continues to use terror as a means of attempting to accomplish its foreign policy and uses terror organizations, such as HAMAS, Hezbollah and other terror organizations as its tools and proxies to commit the terror attacks.  This has been determined by the US Department of State, which designated the Islamic Republic of Iran in 1984 as a State Sponsor of Terrorism, a status that has been continuously maintained since that time.  Numerous US District Court judgments have been entered against Iran for supporting and sponsoring terror against Americans.

45.     The Islamic Republic of Iran is a republic in name only. In reality, it is a theocracy headed by a single cleric holding the title of Supreme Leader who has nearly complete control over the country's policies and actions. Externally it appears to be a democratic regime with regular elections, but the truth is that the Supreme Leader is a dictator.

46.     The constitution gives the Supreme Leader the responsibility to set the general policies of Iran, including domestic and foreign policies.

47.     The Supreme Leader also is commander-in-chief of the armed forces, controls the intelligence and security operations, appoints leaders of the judiciary, state radio, and state

television networks, and is supreme commander of the Islamic Revolutionary Guard Corps (IRGC).

48.     The Supreme Leader appoints half of the Council of Guardians, the body that oversees the Parliament, ensures laws are in compliance with Sharia Law, and determines which candidates are qualified to run for public office.

49.     The Supreme Leader, by and through his independent appointments, effectively controls what laws are passed and who is allowed to run for office.

50.     The first Supreme Leader, Ayatollah Ruhollah Khomeini, assumed power in 1979 after a popular uprising. He instituted clerical rule and established the modern Iranian constitution that establishes a Supreme Leader as the real head of the state.

51.     Khomeini ruled until his death on June 4, 1989.

52.     Seyyed Ali Khamenei was selected by the Assembly of Experts, an 86-cleric assembly, to be the second, and current, Supreme Leader in August 1989.

53.     Since his ascension to Supreme Leader, Khamenei has continued and expanded Khomeini's ideology of terrorism as an important tool of foreign policy.

54.     The Islamic Republic of Iran supports such Foreign Terrorist Organizations as HAMAS, Hizballah (also spelled Hezbollah), and Palestinian Islamic Jihad.  Iran is publicly committed to the destruction and annihilation of the State of Israel, demonizes Israel and the United States of America at the United Nations and in the court of public opinion and supports international terror in pursuit of its political goals against both Israel and the United States of America.  Support for HAMAS from Iran's territory or Iran government actors, on the scale required to facilitate, support, arm, embolden and encourage HAMAS, could not have been accomplished without the explicit authorization of the Iranian government and Iranian Military

11

Intelligence through Supreme Leader Ali Khamenei.

55.     Iran has an extensive history of funding and supporting HAMAS terrorism with the goal of murdering citizens of the United States. A few of those attacks include, but are not limited to, the following cases as decided by this Court:

a.  The Ben Yehuda Street bombing on September 4, 1997, in which three HAMAS terrorists entered a crowded pedestrian mall in Jerusalem and detonated their suicide bombs killing five people and injuring nearly 200, including the American citizen Yael Botvin. This Court found Iran liable for funding, aiding, and supporting the HAMAS terrorists in the matter of *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232 (D.D.C. 2012).

b.  The Sbarro restaurant bombing on August 9, 2001, in which a HAMAS terrorist detonated a bomb that he carried in a guitar case, killing fifteen people including at least two American citizens, one of whom was Malki Roth. This Court found Iran liable for the material support and training they provided to the HAMAS terrorist in the matter of *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015).

c.  The April 30, 2003, suicide bombing at Mike's Place, a music club in Tel Aviv, Israel. A HAMAS suicide bomber detonated his explosives inside Mike's Place, a popular club next to the US Embassy to Israel and frequented by many tourists and US Embassy personnel. This Court found Iran liable for providing logistical and financial support to HAMAS in the matter of *Baxter v. Islamic Republic of Iran*, No. 11-cv-02133 (D.D.C. Sept. 27, 2019).

d.  On July 20, 2014, Max Steinberg, an American citizen who had moved to Israel on September 11, 2012 to help in the response to the terror being waged against Israel,

and who was serving in the Golani Brigade of the IDF, went to search for rocket launchers and terror tunnels in Gaza City, in keeping with his mission to help stop terror. While Max was in Gaza City for this counter-terrorism effort, a member of HAMAS shot at and hit Max's vehicle with an anti-tank rocket. Max was killed by the terrorists' rocket attack. This Court found Iran liable for the death of Max Steinberg and for the injuries to his family. In the matter of *Estate of Steinberg v. Islamic Republic of Iran*, No. 17-CV-1910 (RCL), 2019 WL 6117722, at *1 (D.D.C. Nov. 18, 2019).

56. The Islamic Republic of Iran was designated by the United States Department of State on January 19, 1984 as a State Sponsor of Terrorism and continues to be so designated to the present day. As such, Iran can be sued in this Court for providing material support to terror organizations which commit acts of international terror against Americans abroad.

57. During the period relevant hereto, Defendant Iran provided HAMAS and its terrorists with training bases, facilities, funding, and other material support for its terror activities. These training bases and facilities were located outside Tehran, Iran, in Dara Kazwin.

58. HAMAS and its terrorists utilized the training bases and facilities provided by Iran to train for the commission of acts of terrorism. This training included the use of firearms, explosives, knives, and other weapons.

59. HAMAS and its terrorists also utilized these bases and facilities, *inter alia,* as depots for storage of weapons and explosives, to establish, maintain and operate a leadership command, organizational hierarchy and/or operational infrastructure, and/or offices/headquarters.

60. Additionally, at all times relevant hereto, Iran provided HAMAS and its terrorists with funding and training in terrorism activities, including training on the use of weapons and

explosives.

61.    Upon information and belief, the training in terrorism activities was provided by and through Iran military and intelligence officials, and other agents, employees, and officials of Defendant Iran.

62.    Upon information and belief, at all times relevant hereto, Defendant Iran also provided HAMAS and its leaders, officials, and terrorists, with lodging, safe haven, and shelter permitting them to conduct their terrorist activities freely and unhindered.

63.    The duration, quantity, and quality Iran's material support, even if not designated for specific attacks, greatly contributed to HAMAS' ability to carry out terrorist attacks.  HAMAS and its terrorists could not have carried out the lethal attack described in this Complaint without Iran's support and sponsorship. Iran and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks, yet Iran continues to support HAMAS to this very day.

64.    Therefore, as a direct and proximate result of the provision of the material support to HAMAS by the Defendant Iran as described herein, hundreds of innocent civilians were killed and grievously injured by acts of terrorism committed by HAMAS.  Among the civilians murdered and wounded by HAMAS' terrorist attacks committed with the material support of the Islamic Republic of Iran was the decedent, Ari Fuld, whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages for the heinous act of terrorist murder committed upon the deceased and each of the Plaintiffs, in amounts as shall be proven at the trial of the within action.

## SYRIA'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

65.    The Syrian Arab Republic has used and continues to use terror as a means of

attempting to accomplish its foreign policy and uses terror organizations, such as HAMAS, Hezbollah and other terror organizations as its tools and proxies to commit the terror attacks. This has been determined by the US Department of State, which designated the Syrian Arab Republic in 1979 as a State Sponsor of Terrorism, a status that has been continuously maintained since that time. Numerous United States District Court judgments have been entered against Syria for supporting and sponsoring terror against Americans.

66. The Syrian Arab Republic is a republic in name only. In reality, it is a dictatorship and police state that strategically exhibits only the external forms of a democratic regime.

67. Until a February 2012 referendum, its constitution vested one particular party – the Arab Socialist Ba'ath Party –with leadership functions vested in the State and society.

68. Despite the constitutional referendum, the President still has the power to issue laws, and controls the legislative process.

69. The terror-supporting history and understanding of the structure and makeup of the Syrian Arab Republic is relevant to its current support of terror. In 1966, Syrian Ba'athists conducted a coup d'état. The Ba'athists eliminated all political parties in opposition. Hafez Al-Assad was appointed Minister of Defense.

70. In 1970, Hafez Al-Assad led another coup, in which the Ba'ath party was purged of internal opposition, its leaders were jailed, and Hafez Al-Assad installed as President of the police state.

71. The Al-Assad family has controlled the Syrian regime without interruption for forty-seven (47) years, since approximately 1970 until today.

72. Hafez Al-Assad had a three-decade Presidency, lasting from 1970 to 2000, in which he was confirmed as President in unopposed referenda five consecutive times.

73.     He was succeeded by his son Bashar Al-Assad in 2000. Bashar Al-Assad was confirmed as President, leader of the Ba'ath Party and leader of the Army, for a 7-year term, by an unopposed referendum held in 2001 in which he claimed 97.2% of the vote.

74.     He was re-appointed in another unopposed referendum in 2007, this time claiming 97.6% of the vote.

75.     In 2014, Bashar Al-Assad was reelected to a third 7-year term, claiming 88.7% of the vote with polling only allowed in government-held territory.

76.     Members of President Al-Assad's own minority sect, the Al-Awali clan, control most key positions in the Syrian military and Syrian intelligence and security services.

77.     The Ba'ath Party, controlled by Al-Assad, is in control of the Syrian military, intelligence and security services, the latter consuming a large share of Syria's economic resources.

78.     President Al-Assad and his senior aides in the Syrian military and Syrian intelligence and security services make most important decisions in Syrian political and economic life.

79.     There are more than a dozen security services in Syria, some overlapping in their domains, to make sure that the whole of Syrian territory is covered. These security services answer directly to President Bashar Al-Assad and his brother General Maher Al-Assad, commander of the Syrian Republican Guard.

80.     Syria is a dictatorship which has been undergoing a civil war during this past decade, emanating from Syria's repression of freedoms within Syria.

81.     Syria has been in a state of war with its neighbor, the State of Israel, since its founding.  Syria is and remains committed to the destruction of the State of Israel and uses the providing of material support for acts of terror as a means of expressing its political opposition to

16

Israel and the United States of America.

82.     Syria provides extensive material support for HAMAS as part of its network of terror supporting activities in opposition to Israel and the United States of America.

83.     The Syrian Arab Republic was designated by the United States Department of State on December 29, 1979 as a State Sponsor of Terrorism and continues to be so designated to the present day.  As such, the Syrian Arab Republic can be sued in this Court for providing material support to terror organizations which commit acts of international terror against Americans abroad.

84.     Support for HAMAS from Syrian territory and/or by Syrian government actors, on the scale required to facilitate HAMAS, could not have been accomplished without the explicit authorization of the Syrian government and Syrian Military Intelligence through President Al-Assad.

85.     U.S. Department of State Bulletin 87, published in 1987 [Feb. 1987:73] states: "[a]vailable evidence indicates that Syria prefers to support groups whose activities are generally in line with Syrian objectives rather than to select targets or control operations itself. Damascus utilizes these groups to attack or intimidate enemies and opponents and to exert its influence in the region. Yet at the same time, it can disavow knowledge of their operations. Such Syrian-supported groups have carried out scores of attacks against Palestinian and other Arab, Turkish, Israeli, and Western targets…".

86.     The Bulletin lists many examples of Syrian sponsorship of terrorism and terrorist organizations.

87.     Syria has an extensive history of funding and supporting HAMAS terrorism with the goal of murdering citizens of the United States and of Israel. A few of those attacks include, but are not limited to:

a.  The July 20, 2014, rocket-propelled grenades launched by HAMAS terrorists at an Israeli armored vehicle killing American Max Steinberg and six others who were travelling in Gaza City in search of three HAMAS-kidnapped boys, two Israelis and one American. The HAMAS terrorists were materially supported by Syria with financial support, smuggled weapons, and training. This Court found Syria liable for sponsoring and providing materials support to HAMAS. *Estate of Steinberg v. Islamic Republic of Iran*, No. 17-CV-1910 (RCL), 2019 WL 6117722, at *1 (D.D.C. Nov. 18, 2019).

b.  The June 12, 2014, kidnapping and murder of three boys, two Israelis and one American, Naftali Fraenkel. The boys were kidnapped by HAMAS terrorists at a junction inside the territory under the control of the State of Israel in Alon Shvut, an Israeli community southwest of Jerusalem, on their way home from school. After eighteen (18) days of intense searching, their bodies were discovered on the property of the head of the HAMAS cell that orchestrated the kidnapping and murders. This Court found Syria liable for sponsoring and providing materials support to HAMAS. *Fraenkel v. Islamic Republic of Iran*, 248 F.Supp.3d 21 (D.C.D.C. 2017).

c.  The October 22, 2014, vehicular attack by Abdel Rahman Shaludi, HAMAS terrorist. Abdel drove a car to a light rail station in Jerusalem where he intentionally drove onto the tracks and rammed his vehicle into the crowd of people attempting to kill as many pedestrians as possible. Among the crowd was an American baby, Chaya Zissel Braun, who was in a stroller when it was struck by the car. Chaya was thrown into the air before landing her head on the pavement; Chaya was

pronounced dead two hours later in a nearby hospital. This Court found Syria liable for sponsoring and providing materials support to HAMAS. *Braun v. Islamic Republic of Iran, et al.*, 228 F. Supp. 3d 64 (D.D.C. 2017)

88.     During the period relevant hereto, Defendant Syria provided HAMAS and its terrorists with training bases and facilities. These training bases and facilities were located within Syria, and in areas of Lebanon including in the Bakaa Valley occupied by and under the complete control of Syria.

89.     HAMAS and its terrorists utilized the training bases and facilities provided by Syria to train for the commission of acts of terrorism. This training included the use of firearms, explosives, and other weapons.

90.     HAMAS and its terrorists also utilized these bases and facilities, *inter alia,* as depots for storage of weapons and explosives, to establish, maintain and operate a leadership command, organizational hierarchy and/or operational infrastructure, and/or offices/headquarters.

91.     Additionally, at all times relevant hereto, Syria provided HAMAS and its terrorists with funding and training in terrorism activities, including training on the use of weapons and explosives.

92.     Upon information and belief, at all times relevant herein, the training in terrorism activities was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Defendant Syria.

93.     Upon information and belief, at all times relevant hereto, Defendant Syria also provided HAMAS and its leaders, officials, and terrorists, with lodging, safe haven, passage and shelter permitting them to conduct their terrorist activities freely and unhindered.

94.     The duration, quantity, and quality Syria's material support, even if not designated

for specific attacks, greatly contributed to HAMAS' ability to carry out terrorist attacks.  HAMAS could not have carried out the murderous attack on Ari Fuld as described in this Complaint without Syria's support and sponsorship. Syria and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks yet continued to support HAMAS.

95.    As a direct and proximate result of the provision of the material support to HAMAS by the Defendant Syria as described herein, hundreds of innocent civilians were killed and/or grievously injured by acts of terrorism committed by HAMAS.  Among the civilians murdered and wounded by HAMAS' terrorist attacks is the decedent, Ari Fuld, whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages for the heinous act of terrorist murder committed upon the deceased and each of the plaintiffs, in amounts as shall be proven at the trial of the within action.

### COUNT I
### Under 28 U.S.C. §1605A(c)
### (on behalf of All Plaintiffs)

96.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

97.    As recounted above, the death of Ari Fuld was caused by a willful and deliberate act of terror committed by HAMAS, a Foreign Terrorist Organization, with the material aid and support of the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, and each of them, who through their agents, financed the attack, planned the attack and rendered material support to the activities of HAMAS that resulted in the murder of Ari Fuld, a US national. Those agents were at all times acting with the scope of their agency and acted on the direction of and/or with the material support of the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, and each of them, jointly and severally.

98.     As a direct and proximate result of the willful, wrongful and intentional act of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, each of the Plaintiffs, each being a US national, have endured extreme mental anguish, physical injury, pain and suffering, solatium, and loss of the affection, love and companionship of their beloved son and brother, Ari Fuld, all to the damage of his Estate and their individual damages and for which the Plaintiffs and each of them seek an award of damages and judgment against each of the Defendants, jointly and severally, to the fullest extent of the law.

99.     WHEREFORE, each of the Plaintiffs demand that judgment be entered, jointly and severally, against the Defendants, The Islamic Republic of Iran and the Syrian Arab Republic, and each of them, for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, emotional distress, and solatium in such amounts as shall be proven at trial, and for their costs expended, including attorneys' fees, and as otherwise as permitted by this Court.

**COUNT II**
**LOSS OF SOLATIUM**
**(On behalf of all Plaintiffs except the Estate of Ari Fuld)**

100.     The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

101.     As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Defendants, their agents and instrumentalities, each of the Plaintiffs suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of the victims.

102.     Accordingly, each of the Plaintiffs being a US national bring claims for loss of solatium against the Defendants, and each of them, jointly and severally pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, under the laws of the District of Columbia.

103.    WHEREFORE, each of the Plaintiffs demand that judgment be entered against the Defendants and each of them, jointly and severally, in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by this Court.

### COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (On behalf of all of the Plaintiffs )

104.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

105.    On September 16, 2018, a HAMAS terrorist willfully, violently, and forcefully stabbed and killed the decedent, Ari Fuld, a US national.

106.    The act of stabbing and killing Ari Fuld constituted extreme and outrageous conduct on the part of HAMAS, whose acts were funded, directed and materially supported by the Islamic Republic of Iran and the Syrian Arab Republic.

107.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of HAMAS and its terrorists who were funded and directed by the Islamic Republic of Iran and the Syrian Arab Republic, Plaintiffs suffered severe emotional distress, entitling them to an award of compensatory damages.

108.    Each Plaintiff may assert a cause of action for intentional infliction of emotional distress against the Defendants in connection with the willful, wrongful, intentional, and reckless actions of HAMAS terrorists.  Such cause of action may be asserted pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, under the laws of the District of Columbia.

109.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants and each of them, jointly and severally, in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by this Court.

## COUNT IV
## PUNITIVE DAMAGES
## Under 28 U.S.C. § 1605A(c)
## (on behalf of all Plaintiffs)

110.     The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

111.     The actions of the Islamic Republic of Iran, who has been committing, sponsoring, and supporting acts of international terror against Americans and others at least since 1979, and certainly since 1984 when it was designated as a State Sponsor of Terror; and the actions of the Syrian Arab Republic, who has been committing, sponsoring, and supporting acts of international terror against Americans and others at least since 1979, when it was designated as a State Sponsor of Terror; are heinous in nature, politically motivated, and target the United States of America and the State of Israel, its citizens, residents and visitors, thereby rendering both Defendants, jointly and severally, liable for the heinous murder of Ari Fuld, and thereby entitling each of the Plaintiffs, being his near family members, to an award of damages as shall be determined at trial and in accordance with the laws of the United States.

112.     The acts of the Defendants, and each of them, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life as above described was intended as a result by each Defendant. The family members of Ari Fuld are each victims of the acts of international terror committed by HAMAS with the material support of each of the Defendants. The actions of the HAMAS terrorist who carried out the attack described was within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C §1605A(c), the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

113.    The actions of HAMAS, as set forth hereinabove, were intentional and malicious and in willful, wanton, and reckless disregard of Ari Fuld's rights and physical well-being. The actions of HAMAS were part of its ongoing and continuing campaign of terror committed against citizens of the United States of America and the State of Israel in support of the political goals and aims of HAMAS to reject peace with Israel, to oppose US foreign policy in the region, and to use terror as a means of destroying the State of Israel, consistent with the foreign policy positions of the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, both of which are avowed enemies of Israel and oppose US foreign policy in the region. The acts of HAMAS were facilitated through funding, training, and material support by the Islamic Republic of Iran and the Syrian Arab Republic. In accordance with 28 U.S.C § 1605A(c) the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, and each of them, are therefore liable for the actions of HAMAS, the Foreign Terrorist Organization and its terrorists. In providing such funding, material support, direction, and training, the Islamic Republic of Iran and the Syrian Arab Republic were acting within the scope of its agencies as an instrumentality. Said agencies rendered material support to the terrorists who actually carried out the act of murdering the decedent, Ari Fuld. This Court has previously found the Defendants liable for the support of HAMAS and other Foreign Terrorist Organizations. Notwithstanding said findings, the Defendants Iran and Syria have continued to this day to sponsor and support terror. The Defendants, and each of them, must be punished by this Court for their continuing acts of sponsorship of terror. The Defendants, and each of them, must be held out as an example to the world that this Court will not countenance acts of terror, nor those who materially support and fund terror. A maximal award of punitive damages is requested on behalf of each and all of the Plaintiffs, being the mother, father and brothers of the decedent, Ari Fuld, as against all Defendants, jointly and severally, in accordance

with the provisions of 28 U.S.C. §1605A(c), each of which are liable for punitive damages.

114.    WHEREFORE, the Plaintiffs pray that judgment be entered, jointly and severally, against the Islamic Republic of Iran and the Syrian Arab Republic, on behalf of each Plaintiff, in the amount of one billion US Dollars ($1,000,000,000) for the Plaintiffs, as against each of the Defendants, jointly and severally, and their costs herein expended.

## **PRAYER FOR RELIEF**

115.    WHEREFORE, Plaintiffs, request this Court find each of the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, liable for the acts alleged herein and enter joint and several Judgment against the Defendants as follows:

a. Awarding Plaintiffs, and each of them, compensatory damages against Defendants Islamic Republic of Iran and the Syrian Arab Republic, jointly and severally, in amounts to which they are entitled by law and as shall be determined at trial in accordance with evidence to be submitted to this Court;

b. Awarding Plaintiffs Miriam Fuld, N.S.F., Naomi Fuld, Tamar Gila Fuld, and Eliezar Yakir Fuld solatium damages against the Defendants, jointly and severally, in amounts to which they are entitled by law and as shall be determined at trial in accordance with evidence to be submitted to this Court;

c. Awarding Plaintiffs punitive or exemplary damages against Defendants Iran and Syria, jointly and severally, in the amount of one billion US dollars ($1,000,000,000) as punishment for their continued support for and sponsorship of acts of terror against Americans, and to send a message to the world that this Court will not countenance the continued sponsorship of terror by the Islamic Republic of Iran and/or the Syrian Arab Republic, in such amount and consistent with

evidence as shall be determined at trial in accordance with evidence to be submitted to this Court;

d.   Awarding Plaintiffs prejudgment interest and post judgment interest as computed and calculated at the maximum rate allowable by law;

e.   Awarding Plaintiffs their costs and disbursements and reasonable allowances of reasonable fees for Plaintiffs counsel and experts and reimbursement of expenses;

f.   Leave to amend this Complaint as the interests of justice may allow; and

g.   Granting any and all such further and other relief as the Court may deem just and proper.

Dated: December 1, 2020

Respectfully submitted,

Heideman Nudelman & Kalik, P.C.
1146 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 463-1818
*Counsel for Plaintiffs*

By: */s/Richard D. Heideman*
Richard D. Heideman (DC Bar No. 377462)
Noel J. Nudelman (DC Bar No. 449969)
Tracy Reichman Kalik (DC Bar No. 462055)

Of Counsel to be admitted *pro hac vice:*

Jeffrey Fleischmann(to be admitted *pro hac vice*)
Law Offices of Jeffrey Fleischmann, PC
150 Broadway, Suite 900
New York, NY  10038
(646) 657-9623

Samuel Silverman (to be admitted *pro hac vice*)
The Silverman Law Firm
16 Squadron Blvd
New City, NY 10956
(845) 517-0351